UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
In re:                                         )          CHAPTER 7
                                               )
PETER M. SALERNO                               )          CASE NO. 08-30926 (ASD)
LYNN M. SALERNO,                               )
                                               )
          Debtors.                             )          Re: DOC. I.D. NO. 23
------------------------------------------------------

**MEMORANDUM OF DECISION AND ORDER
ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge.

## I.  INTRODUCTION

In this matter the United States Trustee prosecutes a motion seeking the dismissal of the Debtors' pending Chapter 7 case upon the alternative bases of (i) a "presumption of abuse" and (ii) the "totality of the circumstances" pursuant to Section 707(b) of the Bankruptcy Code . Upon the relevant and uncontested record of this bankruptcy case the Court determines, *inter alia*, that there is no presumption of abuse applicable to the Debtors, and that under the totality of the circumstances the pendency of the Debtors' bankruptcy case is not an abuse of Chapter 7. Accordingly, and for the reasons particularized hereafter, the Trustee's motion shall be denied.

## II.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant case by virtue of 28 U.S.C. § 1334(a).  This Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).

### III. BACKGROUND

On March 26, 2008 (hereafter, the "Petition Date"), the Debtors commenced this bankruptcy case by filing of a voluntary bankruptcy petition (hereafter, the "Petition") under Chapter 7 of Title 11, United State Code. The Petition was accompanied by the requisite Statements and Schedules.

On June 6, 2008, the United States Trustee filed a statement pursuant to Section 704(b)(1) asserting that the Debtors' case is presumed to be an abuse under Section 707(b). On July 3, 2008, the Trustee (heretofore and hereafter, the "Trustee") filed a <u>. . . Motion to Dismiss Under Section 707(b)(1) of the Bankruptcy Code . . . .</u> (hereafter the "Motion") seeking a dismissal of this case based upon (A) an alleged presumption of abuse arising under 11 U.S.C. § 707(b)(2) or, in the alternative, (B) a claim that the totality of the circumstances demonstrate that granting relief to the Debtors would be an abuse of the provisions of chapter 7 under 11 U.S.C. § 707(b)(3).  More specifically, the Trustee asserts that based upon the mathematical formula set forth in 11 U.S.C. § 707(b)(2), the Debtors have approximately two and a half times the income required to create the presumption of abuse. In addition, the Trustee asserts that the totality of the Debtors' circumstances, including the ability to repay 100 percent of priority unsecured debts and approximately 63 percent of their unsecured debts over a 60 month period, demonstrates that the Debtors' attempt to discharge their debt under chapter 7 of the Bankruptcy Code is an abuse of the provisions of chapter 7 pursuant to 11 U.S.C. § 707(b)(3).

According to the Debtor's Schedule I (Current Income of Individual Debtor(s)), Debtor Peter M. Salerno has been employed by "Aetna" in the area of "computer tech support" for the past 10 years; and Debtor Lynn M. Salerno has been employed as an "investigation analyst" for the "Hartford Fire Ins. Co." for the past seven years. The Debtors do not have any dependents.

The Debtors' Schedule B (Personal Property) reflects that the Debtors owned three vehicles on the Petition Date: (i) a 1997 Ford 150 truck, (ii) a 2001 Subaru Outback, and (iii) a 2004 Mazda Tribute (collectively, the "Vehicles"). On Schedule D (Creditors Holding Secured Claims), the Debtors did not list any secured debt encumbering the Vehicles. On Schedule G (Creditors Holding Unsecured Priority Claims), the Debtors did not list any leases with respect to the Vehicles.

On Lines 23 and Line 24 of Official Form 22A (Statement of Current Monthly Income and Means Test Calculation) (hereafter, the "Means Test Form"), the Debtors claim a transportation ownership/lease expense deduction (hereafter, the "Vehicle Ownership Deduction") of $489.00 each, for two of the Vehicles, for a total of $978.00.

Schedule B also discloses that Debtors Lynn M. Salerno and Peter M. Salerno own 401(k) accounts valued by them on the Petition Date at $33,000.00 and $42,000.00, respectively.

Schedule I also reflects that the Debtor Peter M. Salerno has deducted from his monthly income (i) $877.35 for "401K and 401K loans" and (ii) $234.10 for a "stock purchase plan". Likewise, Schedule I discloses that the Debtor Lynn M. Salerno has deducted from her monthly income $660.12 for "401K and 401K loans", *inter alia*.

## IV.  DISCUSSION

Upon motion by a United States Trustee, *inter alia*, a bankruptcy court may dismiss a case filed under Chapter 7 of the Bankruptcy Code by an individual debtor "whose debts are primarily consumer debts" if "the granting of relief would be an abuse of the provisions" of Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 707(b)(1).  Under certain financial circumstances, assessed through the Means Test Form, abuse is presumed.  See 11 U.S.C. § 707(b)(2).  If a debtor's financial circumstances do not produce a presumption of abuse, the Court may still find abuse based upon, *inter alia*, "bad faith" or the "totality of the circumstances".  11 U.S.C. § 707(b)(3).

**A.  Presumption of Abuse Under Section 707(b)(2).**

Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress created a means test (the "Means Test") – Section 707(b)(2) – for purposes of determining Chapter 7 abuse, *inter alia*.  With respect to a debtor whose current monthly income exceeds the median family income for his locality, a court "shall presume abuse exists" if the debtor fails the Means Test – that is, if his income, reduced by certain allowable monthly expenses, exceeds a particular statutorily-determined amount.  See 11 U.S.C. § 707(b)(2), (7).

Based upon the figures in the Debtors' Means Test Form, including their $978 Vehicle Ownership Deduction, a presumption of abuse does not arise.  If, however, the $978 Vehicle Ownership Deduction is excluded, as urged by the Trustee, an abuse presumption does arise.

Allowable expense deductions under the Means Test include the following:

. . . the debtor's applicable monthly expense amounts specified under the

4

> National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (2008).

The "National Standards and Local Standards" are tables setting out various expense amounts that are used by the Internal Revenue Service ("IRS") in collecting delinquent taxes. The National Standards set forth amounts allowed as expenses for food, clothing, housekeeping, personal care, and miscellaneous items, based on family size and gross monthly income. The Local Standards set forth expense amounts for transportation and for housing and utilities. With respect to *transportation*, the Local Standards provide amounts for *operating* costs and public transportation costs, based on locality and the number of cars owned (up to two). The Local Standards also provide single amounts (not based on locality) for *ownership* costs relating to a first and second car.

*As utilized by the IRS*, the amounts contained in the Local Standards function as "caps" – the delinquent taxpayer is allowed the Local Standard or the amount actually incurred for the subject expense category, whichever amount is less. However, the Debtors here assert that for purposes of bankruptcy use, the Local Standards, and specifically those for transportation ownership expense, were intended by Congress to constitute fixed deduction amounts, regardless of actual expenses. By contrast, the Trustee urges this Court to apply the Local Standards in the manner that they are administrative utilized by the IRS. Thus, under the Trustee's view, the fact that the Debtors are not currently making payments to third-party lenders or lessors with respect

5

to the ownership of the Vehicles precludes any Vehicle Ownership Deduction on their Means Test Form.

Courts of bankruptcy jurisdiction have split somewhat evenly on the question of whether a debtor who makes no payments to third parties on vehicle loans or leases may still claim a Vehicle Ownership Deduction in accordance with the cap amount stated in the IRS Standards. Compare, e.g., In re Meade, 384 B.R. 132 (W.D.Tex. 2008) *with* In re Armstrong, 395 B.R. 127 (E.D.Wash. 2008) (Chapter 13 case). With respect to that question, this Court aligns itself with those courts that have permitted debtors who are not leasing or financing a vehicle nonetheless to claim the scheduled amount for vehicle ownership from the Local Standards. In doing so, this Court wholly adopts, and incorporates herein by this reference, the specific conclusions and analysis of the Honorable Robert L. Krechevsky, as stated in the case of In re Roberts, 2008 WL 542503, 59 C.B.C.2d 661 (Bankr. D.Conn. 2008).

In addition, this Court notes that the Roberts' analysis comports with common sense and sound public policy. The opposing position gives credence to only two methods by which individuals acquire the use of an vehicle – (i) leasing and (ii) purchasing through financing. However, there is another, time-honored method of vehicle acquisition – purchasing without financing. Under this method, an individual understands that the vehicle he currently drives will eventually need to be replaced. So he *saves* money each month – as the current vehicle depreciates – to position himself to make a full cash purchase of a "new" vehicle when the current one is no longer reliable. In essence, this is a form a self-financing; it does not result in a monthly payment *obligation* to a third-party lessor or lender, but the debtor's prudent installment savings is no less a drain on his

monthly income than would be a lease or loan payment.

A construction that recognizes only auto leases and loans as legitimate methods of vehicle acquisition encourages the incurrence of debt; and by punishing those who choose to acquire vehicles through a pattern of personal saving, ultimately discourages that socially-beneficial behavior.  It is inconceivable to this Court that Congress would enact legislation whose purpose and effect was to elevate the values of consumer financing over personal saving.

Accordingly, since the Court finds that the Debtors' Vehicle Ownership Deduction on their Means Test Form to be appropriate, a presumption of abuse does not arise in this case under the provisions of Section 707(b)(2).

**B.  Totality of Circumstances Under Section 707(b)(3).**

Alternatively, the Trustee urges the Court to determine, pursuant to Section 707(b)(3), that the pendency of the Debtors' case under Chapter 7 is in fact abusive based upon "the totality of the circumstances."  In considering the Debtors' ability to pay, courts typically look to the "disposable income" that would be available to pay unsecured creditors under a hypothetical Chapter 13 plan.  See, e.g. In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997) ("[A]bility to pay for §707(b) purposes is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding.").

The Trustee, citing In re Heffernan, 242 B.R. 812, 818 (Bankr. D.Conn. 1999), asserts that contributions to the Debtors' retirement plans, as well as payments on loans taken from same, should be considered part of the Debtors' disposable income available to repay creditors in a hypothetical Chapter 13 plan. The Trustee's reliance on Heffernan, however, is inapposite, as it has been superseded by the passage of BAPCPA.  First, for

7

a debtor with an above-median income, BAPCPA provides that the expenses used to determine the disposable income available to pay unsecured creditors in a Chapter 13 plan are those determined under the Means Test. 11 U.S.C. §1325(b)(3). Since the Debtors' current monthly income is less than the total of such expenses, which do not include any amounts for contributions or loan repayments to a retirement plan, they would have no disposable income with which to pay unsecured creditors under a Chapter 13 plan. Moreover, even if a debtor's disposable income were not so defined, BAPCPA excludes from disposable income (1) any amounts withheld from wages as a retirement plan contribution, 11 U.S.C. §541(b)(7); and (2) any amounts required to repay a loan from the debtor's retirement plan, 11 U.S.C. §1322(f).

Accordingly, the Court is not persuaded that, under the totality of the circumstances, the Debtors' bankruptcy case is an abuse of Chapter 7.

### V.  CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that the Debtors' bankruptcy case is not an abuse of Chapter 7. Accordingly,

**IT IS HEREBY ORDERED** that the Motion is **DENIED**.

Dated: June 25, 2009                                                                                   BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge

8